UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN LUKE CURTIN,<br>    Plaintiff | ) ) ) | CIVIL ACTION NO. 4:21-CV-1926 |
| v. | ) ) | (ARBUCKLE, M.J.) |
| KILOLO KIJAKAZI,<br>*Acting Commissioner of Social<br>Security*,<br>    Defendant | ) ) ) ) | |

## <u>MEMORANDUM OPINION</u>

## I.    INTRODUCTION

Plaintiff John Luke Curtin, an adult who lives in the Middle District of Pennsylvania, seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1383(c)(3).

This matter is before me upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, the Court finds the Commissioner's final

decision is not supported by substantial evidence. Accordingly the Commissioner's final decision will be VACATED.

## II.  BACKGROUND & PROCEDURAL HISTORY

On March 4, 2020, Plaintiff protectively filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. (Admin. Tr. 12, 190-203). In these applications, Plaintiff alleged he became disabled on July 3, 2019, when he was 49 years old, due to the following conditions: abdominal hernia, chronic pancreatitis, duodenal ulcer with hemorrhage, hallux valgus of left foot, history of alcohol abuse, and type 2 diabetes mellitus without complication. (Admin. Tr. 225). Plaintiff alleges that the combination of these conditions affects his ability to lift, squat, stand, reach, walk, climb stairs, complete tasks, and get along with others. (Admin. Tr. 248). Plaintiff has at least a high school education. (Admin. Tr. 23). Before the onset of his impairments, Plaintiff worked as a construction worker, machine operator, packer, forklift operator, and mechanic. (Admin. Tr. 23).

On June 12, 2020, Plaintiff's applications were denied at the initial level of administrative review. (Admin. Tr. 12). On October 22, 2020, Plaintiff's applications were denied at the reconsideration level of administrative review. *Id*. On November 5, 2020, Plaintiff requested an administrative hearing. *Id*.

On February 17, 2021, Plaintiff, assisted by counsel, appeared and testified during a hearing before Administrative Law Judge Richard E. Guida (the "ALJ"). *Id*. On March 10, 2021, the ALJ issued a decision denying Plaintiff's applications for benefits. (Admin. Tr. 24). On March 17, 2021, Plaintiff requested that the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council") review the ALJ's decision. (Admin. Tr. 188).

On September 21, 2021, the Appeals Council denied Plaintiff's request for review.  (Admin. Tr. 1).

On November 12, 2021, Plaintiff filed a complaint in the district court. (Doc. 1). In the complaint, Plaintiff alleges that the ALJ's decision denying the applications is not supported by substantial evidence, and improperly applies the law. *Id*. As relief, Plaintiff requests that the court reverse the Commissioner's final decision and award benefits. *Id*.

On January 12, 2022, the Commissioner filed an answer. (Doc. 7). In the answer, the Commissioner maintains that the decision denying Plaintiff's application was made in accordance with the law and is supported by substantial evidence. *Id*. Along with her answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 8).

Plaintiff's Brief (Doc. 11) and the Commissioner's Brief (Doc. 12) have been filed. Plaintiff did not file a reply. This matter is now ready to decide.

## III.  STANDARDS OF REVIEW

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security Appeals.

### A.  SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

A district court's review of ALJ decisions in social security cases is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[1] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2] Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.[3] A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.[4] But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by

---

[1] *See* 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

[2] *Pierce v. Underwood,* 487 U.S. 552, 565 (1988).

[3] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[4] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

substantial evidence."[5] "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole."[6]

The Supreme Court has underscored the limited scope of district court review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; see, *e.g.*, *Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).[7]

In doing so, the court determines whether the final decision is supported by substantial evidence. To accomplish this task, the court must decide not only whether "more than a scintilla" of evidence supports the ALJ's findings, but also whether

---

[5] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[6] *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

[7] *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).

those findings were made based on a correct application of the law.[8] However, the court is enjoined to refrain from trying to re-weigh evidence and "must not substitute [its] own judgment for that of the fact finder."[9]

The court must also ascertain whether the ALJ's decision meets the burden of articulation the courts demand to enable judicial review. As the Court of Appeals has noted on this score:

> In *Burnett*, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable judicial review. *Id.* at 120; *see Jones v. Barnhart*, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.[10]

---

[8] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[9] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

[10] *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).

### B.   STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[11] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.[12] To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured.[13]

---

[11] 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a). Throughout this Opinion, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on March 10, 2021.

[12] 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a).

[13] 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.[14] Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[15]

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[16] In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[17]

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents

---

[14] 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a).

[15] 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).

[16] *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945(a)(1).

[17] 20 C.F.R. § 404.1545(a)(2); 20 C.F.R. § 416.945(a)(2).

him or her from engaging in any of his or her past relevant work.[18] Once this burden

has been met by the claimant, it shifts to the Commissioner at step five to show that

jobs exist in significant number in the national economy that the claimant could

perform that are consistent with the claimant's age, education, work experience and

RFC.[19]

## IV.  DISCUSSION

Plaintiff raises the following issues in his statement of errors:

(1)   "The Administrative Law Judge Erred And Abused His Discretion In Failing To Obtain A Consultative Exam And Fully Develop The Record." (Doc. 11, p. 3).

(2)   "The Administrative Law Judge Erred And Abused His Discretion By Failing To Consult With A Medical Expert Regarding Plaintiff's Residual Functional Capacity Since The Record Was Devoid Of Any Analysis Of Functional Capacity By A Physician Or Other Expert." *Id.*

(3)   "The Administrative Law Judge's Residual Functional Capacity Assessment Is Not Supported By Substantial Evidence And The Administrative Law Judge Failed To Comply With SSR-96-8p, 83-14, And 83-15 In Assessing Plaintiff's Residual Functional Capacity." *Id.*

(4)   "The Administrative Law Judge Erred By Failing To Provide The Vocational Expert With Any Limitations For Plaintiff." *Id.*

(5)   "The Administrative Law Judge Erred By Assuming Jobs Existing In Significant Numbers In The National Economy That Plaintiff Could

---

[18] 42 U.S.C. § 423(d)(5); 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by reference); 20 C.F.R. § 404.1512; 20 C.F.R. § 416.912; *Mason*, 994 F.2d at 1064.

[19] 20 C.F.R. § 404.1512(b)(3); 20 C.F.R. § 416.912(b)(3); *Mason*, 994 F.2d at 1064.

> Perform Without Ever Consulting/Posing Any Hypotheticals To The
> Vocational Expert." (Doc. 11, pp. 3-4).

We begin our analysis by summarizing the ALJ's finding, then will address whether

the ALJ's decision was supported by substantial evidence.

### A.   THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATIONS

In his March 2021 decision, the ALJ found that Plaintiff met the insured status

requirement of Title II of the Social Security Act through September 30, 2024.

(Admin. Tr. 14). Then, Plaintiff's applications were evaluated at steps one through

five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful

activity at any point between July 3, 2019, (Plaintiff's alleged onset date) and March

10, 2021, (the date the ALJ decision was issued) ("the relevant period"). (Admin.

Tr. 24).

At step two, the ALJ found that, during the relevant period, Plaintiff had the

following medically determinable severe impairments: left foot osteoarthritis, hallux

valgus deformity; metatarsus adductus with a prominence of the medial eminence;

lumbar degenerative disc disease; and diabetes with polyneuropathy. (Admin. Tr.

14-15). The ALJ found that the following disorders were medically determinable but

non-severe: abdominal hernia, chronic pancreatitis, duodenal ulcer with

hemorrhage, and alcohol abuse disorder. (Admin. Tr. 15-16). The ALJ found that Plaintiff's alleged impairment of depression was not medically determinable. *Id.*

At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 17).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in the full range of light work as defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b). (Admin. Tr. 19).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in his past relevant work. (Admin. Tr. 22-23).

At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 23-24). To support his conclusion, the ALJ relied on grid rules 202.21 and 202.14.

**B.    WHETHER THE ALJ'S RESIDUAL FUNCTIONAL CAPACITY ASSESSMENT IS SUPPORTED BY SUBSTANTIAL EVIDENCE**

We begin our assessment of this argument by discussing the ALJ's RFC assessment and what it means in terms of Plaintiff's occupational base. The ALJ

found Plaintiff had the residual functional capacity to perform the full range of light

work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b). (Admin. Tr. 19-22).

The Commissioner's regulations define the full range of "light work" as:

> lifting no more than 20 pounds at a time with frequent lifting or carrying
> of objects weighing up to 10 pounds. Even though the weight lifted may
> be very little, a job is in this category when it requires a good deal of
> walking or standing, or when it involves sitting most of the time with
> some pushing and pulling of arm or leg controls. To be considered
> capable of performing a full or wide range of light work, you must have
> the ability to do substantially all of these activities. If someone can do
> light work, we determine that he or she can also do sedentary work,
> unless there are additional limiting factors such as loss of fine dexterity
> or inability to sit for long periods of time.[20]

In this context "frequently" means:

> occurring from one-third to two-thirds of the time. Since frequent lifting
> or carrying requires being on one's feet up to two-thirds of a workday,
> the full range of light work requires standing or walking, off and on, for
> a total of approximately 6 hours of an 8-hour workday. Sitting may
> occur intermittently during the remaining time.[21]

Plaintiff argues that substantial evidence does not support the ALJ's

determination of a light work RFC because he grossly mischaracterized the evidence

of the record, in particular Plaintiff's testimony, and because the objective medical

evidence of record demonstrates Plaintiff is unable to perform the full range of light

work. (Doc. 11, p. 15). Plaintiff also argues "the ALJ relies upon no medical

---

[20] 20 C.F.R. § 404.1567(b); 20 C.F.R. § 416.967(b).
[21] S.S.R. 83-10, 1983 WL 31251.

evidence speaking directly to Claimant's functional capabilities to support his RFC of Claimant," and refers the Court back to arguments made earlier regarding the medical evidence of record. (Doc. 11, p. 14). Plaintiff argues a doctor must make a medical determination about how long a claimant can stand, walk, and how much they can lift and carry, and that there were no medical opinions regarding those functional abilities and the objective medical evidence and treatment records did not include any findings about Plaintiff's functional capabilities. (Doc. 11, pp. 12-13).

In response, the Commissioner argues that "it is well established that the ALJ is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision," and that an ALJ can make an RFC determination even where no doctor has made the same finding and if the only medical opinion on record is contrary. (Doc. 12, pp. 15-16) (internal quotation marks and citation omitted).  The Commissioner also argues that Plaintiff is incorrect because the evidence he offers to support his assertions that the objective medical evidence of record demonstrates Plaintiff is unable to perform the full range of light work are conjecture, inconsistent and "are nothing more than his unsubstantiated belief of what the record viewed in its entirety showed." (Doc. 12, pp. 17-18).

There is no dispute that it is the ALJ's duty to assess a claimant's RFC.[22]  Further, the Commissioner's regulations and Third Circuit caselaw are clear that an ALJ must consider more than just medical opinions when evaluating a claimant's RFC.[23]  Although objective medical evidence and treatment records are relevant to an ALJ's RFC assessment and, *if* they include findings about a claimant's functional abilities may be sufficient to support specific findings in an RFC assessment on their own, as a practical matter such documents do not always contain this information. Thus, the reality in Social Security cases is that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant."[24]

---

[22] 20 C.F.R. § 404.1546(c); 20 CFR 416.946(c).

[23] 20 C.F.R. § 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."); 20 C.F.R. § 404.1512(b) (explaining that "evidence" is "anything you or anyone else submits to us or that we obtain that relates to your claim."); 20 C.F.R. § 416.945(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."); 20 C.F.R. 416.912(b) ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application."); *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) ("In making a residual functional capacity determination, the ALJ must consider all evidence before him.").

[24] *McKean v. Colvin*, 150 F. Supp.3d 406, 418 (M.D. Pa, 2015).

In this case, the ALJ did not cite to any medical opinion regarding Plaintiff's residual functional capacity. At the conclusion of his explanation of his RFC determination, the ALJ noted, "The undersigned has fully considered prior administrative medical findings of record, as discussed under Finding 3, and notes that the record does not otherwise contain any medical opinions on the claimant's functional capacity." (Admin. Tr. 22). These prior administrative medical findings did not include any RFC assessments to begin with as they found that Plaintiff was not disabled. In Finding 3, the ALJ found that these prior administrative medical findings were not consistent with or supported by the record as a whole, particularly the medical record developed after the State agency reviews, and thus found them to be "not persuasive." (Admin. Tr. 15).

In making his RFC determination the ALJ stated,

the undersigned finds the totality of the objective medical evidence of record consistent with limitation to the light exertional base – which limits the amount the claimant can lift and carry to avoid stressing his back or lower extremities – but not supportive of greater exertional or non-exertional limitations on a longitudinal basis.

(Admin. Tr. 22).

The ALJ discusses Plaintiff's treatment records but he does not appear to use his citations to support or explain his finding of an RFC of light work directly. Instead the citations are used to support his finding that the objective medical

evidence of the record does not support the degree of functional limitation Plaintiff

alleges.  The ALJ wrote:

> Post-operative records document good healing with only mild residual
> toe stiffness as a symptoms [sic] and need for only conservative follow-
> up care (brief use of surgical shoe, minor medication for pain) (Ex. 3F,
> 6F, 12F) and intra-operative and post-operative imaging demonstrates
> satisfactory alignment and no hardware complications, with complete
> union of the osteotomy distally within five months of surgery and only
> mild to moderate residual arthritic changes in the foot (Ex. 1F, pp. 3;
> Ex. 3F, pp. 2, 5; Ex. 7F, pp. 3; Ex. 12F, pp. 21), *suggestive of an
> excellent surgical result and marginal residual disorders that are not
> as severe as the claimant alleged.*
>
> Given this apparent excellent resolution of the established toe disorders,
> workup for other potential causes of the reported left lower extremity
> symptoms was undertaken beginning April 2020 (Ex. 4F); thereafter,
> the claimant also began reporting some back pain to his providers along
> with his lower extremity symptoms (*see* Ex. 9F, 10F, 12F, 13F).
> November 2020 EMG/NCS of the left lower extremity was positive for
> polyneuropathy with superimposed left L5-S1 chronic radiculopathy
> (Ex. 12F, pp. 12-15) and lumbar MRI revealed multilevel degenerative
> disc disease/osteoarthritis, without significant central stenosis but with
> L3-4 left L3 nerve root displacement and L4-5 left greater than right L5
> nerve root impingement (Ex. 10F, pp. 10), disorders that could be
> expected to cause the reported symptoms, but the claimant's
> documented treatment to date has been routine and conservative,
> consisting of neuropathic and other non-narcotic medications, physical
> therapy, and a single lidocaine injection to the foot, with at least some
> improvement in symptoms documented with treatment (Ex. 9F, 10F,
> 12F, 13F).
>
> Finally, diabetes mellitus is listed as part of the claimant's chronic
> medical history since January 2018 and is notably insulin dependent
> (Ex. 1F, 3F, 4F, 9F). While initially difficulty [sic] to control, this
> disorder has been stable and largely asymptomatic since the alleged
> onset date per objective treatment records (Ex. 4F, 9F) and notation of

the claimant's hemoglobin A1C, which has been within the stable range of 8.2 to 8.7 since 2019 (Ex. 1F, pp. 17, 33; Ex. 9F, pp. 11), such that there is little indication of functional loss secondary to diabetes mellitus itself. No neuropathic symptoms were initially reported or observed (*see* Ex. 1F, 2F, 3F, 4F, 9F), but the November 2020 EMG/NCS of the left lower extremity was positive for polyneuropathy superimposed on the established radiculopathy, sufficient to establish this disorder as medically determinable (Ex. 12F, pp. 12-15). This disorder has been treated, in combination with radiculopathy, with medication and physical therapy to date, with at least some improvement in symptoms reported (Ex. 9F, 12F, 13F).

With respect to all of these established medically determinable impairment [sic], while the treatment records discussed above are sufficient to establish medically determinable impairments that could be expected to cause the claimant's reported symptoms, *objective physical examination findings do not, on a longitudinal basis, support the degree of functional limitation alleged by the claimant in this case.*

(Admin. Tr. 21-22) (emphasis added). From there, the ALJ does not tie any of his citations to the treatment records to his finding of an RFC of light work other than to say he found "the totality of the objective medical evidence of records consistent with limitation to the light exertional base . . . ." (Admin. Tr. 22). These passages are used to support the ALJ's finding that the objective medical evidence was inconsistent with the functional abilities Plaintiff alleged he has. That is not the same as supporting a finding of an RFC of light work.

Even if the ALJ's above discussion and interpretation of the treatment records is viewed as an attempt to support his RFC determination it is still not enough. Again, while objective medical evidence and treatment records are relevant to an ALJ's RFC

assessment and, *if* they include findings about a claimant's functional abilities may be sufficient to support specific findings in an RFC assessment on their own, Plaintiff's treatment records in this case do not appear to provide any such findings or opinions about Plaintiff's functional abilities for the ALJ to rely on.[25] The ALJ does not cite to any medical opinion or findings or assessments in the treatment record to support his finding of an RFC of light work.

In determining Plaintiff's RFC the ALJ also found that Plaintiff's own reporting of his daily living activities were not consistent with his allegations and were "supportive" of an RFC of light work:

> The claimant's own reporting of his activities of daily living is not entirely consistent with these allegations (Ex. 4E; Testimony). The claimant admits he can lift and carry twenty pounds, consistent with the light exertional base. While he alleges inability to walk more than 60 to 100 feet without resting or to stand/walk for more than 30 minutes to two hours at one time, need to use a cane to ambulate, and difficulty squatting, twisting/turning, climbing, reaching, and completing tasks due to his physical impairments, the claimant admitted that he is capable of attending to his own personal care, providing some care for his elderly parents, caring for his pets, preparing simple daily meals, cleaning, doing laundry, shopping in stores, and typically finishing

---

[25] The closest Plaintiff's treatment records come to providing an assessment of his functional capabilities are in Physical Therapy Certification/Initial Evaluation reports. The reports state, "Functional Limitation Status: Mild," a prognosis of "fair," and "problem list & considerations for discharge: Activity Tolerance, Balance, Pain." (Admin. Tr. 669, 676, 742, 748, 755). These brief and vague assessments by a physical therapist are not substantial evidence of an RFC of light work. The ALJ does not specifically cite to these assessments, nor do they contain an assessment by a doctor of how long Plaintiff can sit and stand and how much Plaintiff can lift.

what he starts, suggestive of good retained exertional and non-exertional capabilities. The claimant did not allege any difficulty bending, kneeling, using his hands, talking, hearing, seeing, remembering, concentrating, understanding, following instructions, or handling stress and reported intact mental capacity for a wide variety of activities of daily living and socialization, as discussed under Finding 3, such that there is little indication in his own reporting of any mental or social deficits due to pain or medication side effects. The undersigned finds this reporting supportive of the retained capacity for the full range of light exertional activity, rather than with total disability, as alleged by the claimant.

(Admin. Tr. 20). However this opinion, particularly when supported by no medical opinions or findings as to Plaintiff's RFC and standing only with the ALJ's lay interpretation of the medical record, is not substantial evidence of the finding of an RFC of light work.

This is not the rare case where bare objective medical evidence, treatment records and non-medical evidence were sufficient for the ALJ to determine Plaintiff had an RFC of light work.[26] "Federal courts have repeatedly held that an ALJ cannot speculate as to a Plaintiff's RFC; medical evidence speaking to a claimant's functional capabilities that supports the ALJ's conclusion must be invoked."[27]

There were no medical opinions, findings, or other medical evidence about Plaintiff's functional capacity in the record for the ALJ to use to support his

---

[26] *Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *5 (M.D. Pa. Mar. 11, 2014).

[27] *Biller v. Acting Comm'r of Soc. Sec.*, 962 F. Supp. 2d 761, 779 (W.D. Pa. 2013).

determination that Plaintiff has an RFC of light work. "Instead, the ALJ seemingly interpreted the medical evidence of record, and substituted [his] own opinion for that of a medical one in arriving at Plaintiff's RFC."[28] The ALJ reached "a[n] RFC determination without the benefit of any medical opinion," and without any clear objective finding about Plaintiff's ability to stand or walk.[29] "Accordingly, the ALJ's conclusion is not supported by substantial evidence."[30] Remand is therefore required.

### C.   PLAINTIFF'S REMAINING ARGUMENTS

Given that the Court finds it necessary to remand Plaintiff's case because the ALJ's decision is not supported by substantial evidence the Court will not address Plaintiff's remaining claims of error.[31]

---

[28] *McKay v. Colvin*, No. 3:14-CV-2020, 2015 WL 5124119, at *17 (M.D. Pa. Aug. 13, 2015).

[29] *Snyder v. Colvin*, No. 3:16-CV-01689, 2017 WL 1078330, at *5 (M.D. Pa. Mar. 22, 2017).

[30] *Id*.

[31] *See Burns v. Colvin*, 156 F. Supp. 3d 579, 598 (M.D. Pa. Dec. 30, 2015) (Cohn, M.J.), *report and recommendation adopted*, 156 F. Supp. 3d at 582 (M.D. Pa. Jan. 13, 2016) (Kane, J.) (explaining that "[a] remand may produce different results on these claims, making discussion of them moot.").

## V.    CONCLUSION

Accordingly, I find that Plaintiff's request for relief be Granted as follows:

(1)    The final decision of the Commissioner will be VACATED.

(2)    This case will be REMANDED to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

(3)    Final judgment will be issued in favor of John Luke Curtin.

(4)    Appropriate Orders will be issued.


Date: April 12, 2023                    BY THE COURT

                                        *s/William I. Arbuckle*
                                        William I. Arbuckle
                                        U.S. Magistrate Judge